Commonwealth of Pennsylvania, Department of Transportation, Bureau of Traffic Safety, Appellant v. George Andrew Krishak, Appellee.

308

Submitted on briefs June 26, 1985, to Judges MAC-PHAIL, DOYLE and BARRY, sitting as a panel of three.

*Harold H. Cramer,* Assistant Counsel, with him, *Spencer A. Manthorpe,* Chief Counsel, and *Jay C. Waldman,* General Counsel, for appellant.

No appearance for appellee.

OPINION BY JUDGE DOYLE, August 22, 1985:

This is an appeal by the Pennsylvania Department of Transportation (DOT) from an order of the Court of Common Pleas of Somerset County directing that DOT reinstate the operating privileges of George Andrew Krishak (Appellee). DOT had suspended Appellee's operating privileges for six months after receiving a police affidavit indicating that Appellee had refused to submit to a breathalyzer test pursuant to Section 1547 of the Vehicle Code, 75 Pa. C. S. §1547.

The trial court found that Appellee was involved in a one car accident at approximately 12:30 a.m. on August 14, 1982. Appellee's injuries required that he be transported to the hospital by ambulance. The investigating officer, subsequent to his on-scene investigation, arrived at the hospital at approximately 2:00 a.m. and continually attempted to question Appellee who was lying in a bed in the emergency ward with a large cut on the bridge of his nose and was "hooked up to some type of machine." Against the advice of hospital personnel Appellee signed out of the hospital at approximately 3:15 a.m. At the time Appellee signed out, as well as several times earlier, the arresting officer had requested that Appellee take a breathalyzer test. Appellee's original response to the request had been "I don't know." Upon leaving the hospital, however, Appellee agreed to take the test. But when Appellee's father learned that administering the test would require that Appellee be transported to a locale approximately four to five miles away Appel-

lee's father stated that *he* refused to transport Appellee anywhere but home. The trial court found that the arresting officer did not offer to provide Appellee with transportation to the testing locale. Additionally, the father's testimony reveals that while he was never actually asked to transport Appellee to the testing site, he inferred that he was expected to do so. On appeal we must decide first whether the trial court erred in finding that Appellee was not arrested and second whether the trial court erred in finding that Appellee never refused to take the breathalyzer test.[1]

Our scope of review where the lower court has reversed a license suspension for failure to submit to a breathalyzer test is limited to determining whether the lower court's findings were supported by competent evidence, and whether it committed an error of law or manifestly abused its discretion. *Department of Transportation, Bureau of Traffic Safety v. Dauer*, 52 Pa. Commonwealth Ct. 571, 416 A.2d 113 (1980).

To sustain its burden under Section 1547 the Commonwealth must demonstrate (1) that the licensee was placed under arrest (2) that the licensee was requested to submit to a breathalyzer test (3) that he or she refused to do so and (4) that the licensee was warned that failure to submit would result in revocation of the licensee's operating privileges. *Everhart v. Commonwealth*, 54 Pa. Commonwealth Ct. 22, 420 A.2d 13 (1980). Only points one and three are at issue here. Whether a driver has been placed under arrest for purposes of suspension of an operator's license for re-

---

[1] We note that while the trial court found the testimonial evidence of the officer credible, although insufficient on the issue of arrest, it resolved testimonial conflicts on the issue of refusal in favor of Appellee. As fact finder, it was perfectly within its authority to do so. *Phillips v. Commonwealth*, 84 Pa. Commonwealth Ct. 217, 478 A.2d 958 (1984).

fusal to submit to a breathalyzer test is a question of fact and all that is necessary is that the licensee be under the custody and control of the arresting officer; no formal declaration of arrest is required. *Phillips v. Commonwealth*, 84 Pa. Commonwealth Ct. 217, 478 A.2d 958 (1984). Stated another way, the arrest requires only that there be a physical restraint on the arrestee's freedom. *Corry v. Commonwealth*, 59 Pa. Commonwealth Ct. 324, 429 A.2d 1229 (1981). Here, the only finding that the trial court made was that the arresting officer was not certain whether he actually placed Appellee under arrest. The arresting officer informed Appellee "Mr. Krishak, you're not going anywhere, you're going with me to take a breathalyzer." The trial court questioned the arresting officer as to whether this was an arrest as indicated by the following colloquy:

Q. Was that an arrest?

A. I guess it would depend on the definition of an arrest.

Q. Well, you're the Officer that made it. Did you arrest him?

A. I would say 'Yes,' at one point I placed him under arrest and then I changed my mind and left him go in the custody of his father (R. 22a).

While the trial court could have found the arresting officer's testimony unbelievable on this point, it did not do so; rather it found it insufficient as a matter of law to sustain the Commonwealth's burden that an arrest had occurred. Our review of this testimony indicates that Appellee was placed under arrest and that it was only later that the arresting officer determined to relinquish custody of Appellee. We believe that as a matter of law this evidence establishes suf-

ficient control of Appellee to constitute an arrest under the relevant case law, especially when the police officer's repeated attempts to question Appellee at the hospital are considered. We note, in addition, that the fact that the arresting officer *later* released Appellee from custody did not negate the arrest inasmuch as an officer has discretion in such matters. *Municipality of Monroeville v. Jones,* 71 Pa. Commonwealth Ct. 121, 454 A.2d 1153 (1983).

We next consider whether Appellee refused the request to take the breathalyzer test. Whether or not a licensee has refused to take a breathalyzer test is a question of fact. *Department of Transportation, Bureau of Traffic Safety v. Pedick,* 44 Pa. Commonwealth Ct. 44, 403 A.2d 181 (1979). Anything substantially short of an unqualified, unequivocal assent to a request to submit to a breathalyzer test is a refusal. *Id.* Moreover, refusal to take a breathalyzer test need not be expressed in words, but can be implied from a motorist's actions. *Department of Transportation, Bureau of Traffic Safety v. Mumma,* 79 Pa. Commonwealth Ct. 108, 468 A.2d 891 (1983) (smoking after four times being warned it would interfere with the breathalyzer held a refusal); *see also Department of Transportation, Bureau of Traffic Safety v. Jones,* 38 Pa. Commonwealth Ct. 400, 395 A.2d 592 (1978) (refusing to provide sufficient breath for the test held refusal); *Miele v. Commonwealth,* 75 Pa. Commonwealth Ct. 130, 461 A.2d 359 (1983) (responding to request to take test by asking to see attorney held refusal); *Commonwealth v. End,* 6 Pa. Commonwealth Ct. 347, 295 A.2d 196 (1972) (requesting that physician be summoned held refusal).

With respect to the issue of refusal in the instant case the trial court wrote:

In this instance, there is no evidence showing that [Krishak] actually refused to take the test. When he was originally requested to do so while being treated in the emergency room for injuries sustained in the accident, his response was, 'I don't know.' These injuries were serious enough for the hospital to recommend admittance. After discharging himself from the hospital, [Krishak] agreed to take the test, however, his father refused to transport him due to [Krishak's] physical condition coupled with the late hour of the night. Officer Myers [arresting officer] never offered to provide transporation for [Krishak]. . . . (Footnote omitted.)

We must first consider whether "I don't know" constitutes a refusal. We hold that it does. It is, at a minimum, an equivocal and uncertain response and hence falls substantially short of an unqualified yes. Normally, the initial response (here the "I don't know") would control[2] and no further examination of what a licensee later stated need be considered. But here the arresting officer reiterated the request, and the trial court, perhaps because the initial requests occurred while Appellee was busy being treated for his injuries and was no doubt agitated and distracted, went on to find that Appellee later, upon leaving the hospital, *consented* to take the test. Accordingly, we

---

[2] *See Miller Appeal*, 79 Pa. Commonwealth Ct. 648, 470 A.2d 213 (1984) wherein this Court held that police officers are not required to spend time cajoling a licensee or waiting to see if he will change his mind. *See also Department of Transportation, Bureau of Highway Safety v. O'Rourke*, 25 Pa. Commonwealth Ct. 580, 361 A.2d 496 (1976) ; *compare Commonwealth v. Tillitt*, 49 Pa. Commonwealth Ct. 343, 411 A.2d 276 (1980) where a refusal followed by an instantaneous assent is an assent.

will, in this case, examine this latter consent to see if it was withdrawn. The trial court found that when Appellee's father learned that taking the test would require a trip of four to five miles he stated that he refused to drive Appellee to the test site. What is lacking here is a change of mind verbalized by Appellee, but, as noted above, case law is clear that actions can constitute refusal.[3] The trial court was apparently influenced by the fact that the arresting officer never offered to provide Appellee with transportation. But, there is no reason why he should have expressly done so since, by his own testimony, which the trial court found credible, (although insufficient) he had arrested Appellee. Appellee of course, would have had to remain in custody until he took the test, and furthermore, there is nothing to indicate that Appellee or his father sought clarification or in any way expressed their confusion to the arresting officer. Moreover, *Appellee himself* admitted that upon hearing that the test locale was several miles away he decided he was "too tired to go." This behavior taken as a whole must constitute a refusal even absent the direct verbalization of a negative response.

The trial court relied upon this Court's opinion in *Department of Transportation, Bureau of Traffic Safety v. Guarino,* 19 Pa. Commonwealth Ct. 104, 339 A.2d 861 (1975) which it determined to be factually similar. In *Guarino* the driver, upon being asked to take a breathalyzer test at the scene of the arrest, and again at the magistrate's office, remained mute. This Court found that the driver was never transported to

---

[3] We reject any suggestion that no refusal *by Appellee* occurred because it was his father who made the statement while Appellee, who was perfectly able to speak, stood by. We refuse to allow circumvention of the law in this manner and again reiterate that *Appellee's conduct* can constitute a refusal.

the situs of the testing equipment and reasoned that a mere refusal to speak did not constitute a refusal to submit to the test inasmuch as the driver's silence at a spot other than the testing locale did not necessarily mean he would refuse to actually take the test. In the instant case however, we do not have total silence. Rather, we have a consent that was retracted by Appellee's actions in deciding to leave with his father. *Guarino* is thus inapplicable. The trial court also relied upon *Abate v. Department of Transportation*, 53 Pa. Commonwealth Ct. 104, 416 A.2d 1159 (1980) and *Department of Transportation, Bureau of Traffic Safety v. Tillitt*, 49 Pa. Commonwealth Ct. 343, 411 A. 2d 276 (1980). In *Abate* the driver refused to be taken to police barracks, but he was never informed that the testing equipment was there. In *Tillitt* the driver, after being informed of the consequences of his refusal, equivocated *instantaneously* and then assented. Thus, neither of the cases fits the present fact pattern where the driver knew of the location of the testing site but after apparently assenting to take the test then decided to go home.

Having determined that the facts as found by the trial court demonstrate as a matter of law both an arrest and a refusal to take the breathalyzer test we are constrained to reverse and direct reinstatement of the DOT order suspending Appellee's license for six months.

ORDER

Now, August 22, 1985, the order of the Court of Common Pleas of Somerset County, No. 458 Civil 1982, dated May 10, 1983 is reversed and the order of the Department of Transportation suspending Appellee's license for six months is reinstated.