557 A.2d 803

Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing, Appellant *v.* Dennis L. Pustelak, Appellee.

Submitted on briefs January 20, 1989, to President Judge CRUMLISH, JR., Judge COLINS, and Senior Judge NARICK, sitting as a panel of three.

*Christopher J. Clements,* Assistant Counsel, with him, *Harold H. Cramer,* Assistant Chief Counsel, and *John L. Heaton,* Chief Counsel, for appellant.

No appearance for appellee.

OPINION BY JUDGE COLINS, April 17, 1989:

The Department of Transportation, Bureau of Driver Licensing (Department) appeals from an order of the Court of Common Pleas of Erie County which sustained the appeal of Dennis L. Pustelak (Pustelak) from the Department's one year suspension of his operating privilege pursuant to Section 1547(b)(1) of the Vehicle Code (Code), 75 Pa. C. S. §1547(b)(1). This suspension was based upon Pustelak's refusal to submit to chemical testing at the time of his arrest for operating a motor vehicle while under the influence of alcohol in violation of Section 3731(a)(1) of the Code, 75 Pa. C. S. §3731(a)(1).

At the *de novo* hearing before the trial court it was stipulated by the parties that Officer Michael West had reasonable grounds to believe that Pustelak was driving

under the influence, that he arrested Pustelak and that Pustelak refused to submit to chemical testing. Accordingly, the sole issue before the trial court and this Court is whether Pustelak was properly warned that his license would be suspended or revoked if he refused to submit to testing.

The Department offered the testimony of the arresting officer, Officer Michael West and the intoxilyzer operator, Officer Phillip Woods.[1] Pustelak did not testify on his own behalf before the trial court.[2] Officer West testified that subsequent to the arrest, Pustelak was handcuffed and taken to the police station where he was put in what is commonly known as the "break room." At that time, Officer West told Pustelak that he would have to take an intoxilyzer test. Pustelak refused. Officer West then proceeded to inform Pustelak that if he refused to do so, his refusal would *probably* result in a six month suspension of his license.

Approximately twenty minutes after Officer West spoke to Pustelak, Officer Woods, a certified intoxilyzer operator, began questioning Pustelak. Officer Woods testified that:

> A [Pustelak] … was asked would he taken [sic] an intoxilyzer test, which he refused to do.
>
> Q What was the nature of the refusal?
>
> A He said no.
>
> Q Okay. Go ahead. What else?
>
> A All right, our procedure is a refusal must be made to the intoxilyzer operator. No other officer can accept a refusal.
>
> Q Okay. In this instance after he said no, did you explain anything further to him?

---

[1] Officer West testified that he is not an intoxilyzer operator.

[2] We also note that counsel for Pustelak was precluded from filing a brief in this matter, as its request to do so was untimely.

A Yes, I did. We have a form that we read from top to bottom.

Q All right.

A It explains that his license will be suspended or revoked by the department.

Q Did you read this form to him?

A Yes, I did.

. . .

A This is a form that we have filled out prior to administering the intoxilyzer test.

Q Is that the one that you read to [Pustelak]?

A Yes.

Q Would you direct your attention to that portion of the form which deals with the consequences of a refusal and read that into the record.

A 'It is my duty to inform you that you have the right to refuse to submit to a chemical test. If you refuse,' according to law, the Pennsylvania Department of Transportation shall suspend or revoke your operating privilege.'

Q Okay.

A It goes on: 'Do you understand your right to refuse a chemical test?'

Which he replied 'Yes.'

'Will you submit to a chemical test?'

He replied 'No.'

Officer Woods testified that after reading the form to Pustelak, he once again warned Pustelak that his license would be suspended if he refused the test and again asked him if he would submit. However, Pustelak reiterated his reply of "No."

The trial court concluded that because one officer indicated that the driver would *probably* lose his license if he refused to submit to testing, and the second officer indicated to the driver that he *would* lose his license should he refuse to submit to testing, this would result in

confusion on the part of the driver. The trial court, therefore, held that the Department had failed to carry its burden of proving an adequate warning pursuant to Section 1547(b)(2) of the Code, 75 Pa. C. S. §1547(b)(2).

In operating privilege suspension appeals, this Court's scope of review is limited to a determination of whether the trial court's findings were supported by competent evidence, whether there has been an erroneous conclusion of law or whether the trial court's decision constitutes a manifest abuse of discretion. *Department of Transportation, Bureau of Driver Licensing v. Garlan*, 121 Pa. Commonwealth Ct. 400, 550 A.2d 873 (1988). Our examination of the record in this matter indicates that the trial court committed an error of law when it concluded that the Department failed to adequately warn Pustelak of the consequences of a refusal.

This Court has held that where a driver was only advised that his license *could* be suspended for a refusal but then requested and read a copy of Section 1547 of the Code, 75 Pa. C. S. §1547, the statutory warning requirement had been met. *Moran v. Commonwealth*, 44 Pa. Commonwealth Ct. 105, 403 A.2d 637 (1979). The facts of the instant matter compel the same result. It is undisputed that Pustelak was initially informed that his license would *probably* be suspended should he refuse to submit. However, Officer Woods' unrefuted testimony indicates that he read in full, the statement which indicated that "if you refuse, the Pennsylvania Department of Transportation *shall* suspend or revoke your operating privilege." (Emphasis added.)[3] Additionally,   Officer

---

[3] The facts of this matter are nearly identical to those presented in *Everhart v. Commonwealth*, 54 Pa. Commonwealth Ct. 22, 420 A.2d 13 (1980). In *Everhart* this Court remanded to the trial court for a factual determination of what was read or said to the driver. The unrefuted testimony of record in the instant matter clearly indicates exactly what was read and said to Pustelak. Therefore, no remand is necessary.

Woods' testimony also indicates that he issued a second warning and asked if Pustelak would submit to testing after reading the above statement. Pustelak was informed of the consequences of a refusal in no uncertain terms by Officer Woods. The opportunity to assent was offered and was refused.[4]

In accordance with the foregoing discussion, we must conclude that the trial court committed an error of law in concluding that the driver had not been adequately warned. The order of the trial court is reversed.

### ORDER

AND NOW, this 17th day of April, 1989, the order of the Court of Common Pleas of Erie County in the above-captioned matter is reversed.

---

[4] *See generally Jackson v. Commonwealth*, 97 Pa. Commonwealth Ct. 602, 510 A.2d 396 (1986) (driver must have opportunity to assent after proper warning is given).