**Randy KING, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTA-TION, BUREAU OF DRIVER LI-CENSING.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 12, 2002.

Decided Aug. 2, 2002.

Publication Ordered July 7, 2003.

Mark S. Love, Tannersville, for appellant.

Terrance M. Edwards and Harold Cramer, Harrisburg and John V. Rovinsky, Scranton, for appellee.

BEFORE: McGINLEY, Judge, and PELLEGRINI, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Randy King, (Licensee) appeals from an order of the Court of Common Pleas of Monroe County (trial court), denying his appeal and reinstating the one-year suspension of his operating privilege imposed by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (DOT) as a result of his refusal to submit to chemical testing pursuant to Section 1547(b)(1) of the Vehicle Code (Code), 75 Pa.C.S. § 1547(b)(1).[1] We affirm.

On August 17, 2001, Trooper William Long of the Pennsylvania State Police was dispatched to a two vehicle automobile accident in Polk Township, Monroe County, Pennsylvania. Upon conducting an accident investigation, Trooper Long learned that Licensee's vehicle struck the rear of another vehicle which was stopped at a traffic light. Trooper Long proceeded to interview Licensee. During this interview, Trooper Long observed Licensee and detected a strong odor of alcohol surrounding him. Trooper Long also noted that Licensee's speech was slowed, slurred and somewhat incoherent. Upon questioning, Licensee admitted having two beers earlier that evening. Trooper Long then asked Licensee to perform some field sobriety tests, but Licensee refused.

At that point, Trooper Long placed Licensee under arrest for driving under the influence of alcohol and seated him in the back of his patrol car. While Licensee was seated in the rear of the car, Trooper Long read him the Miranda warnings, the Implied Consent warnings and the O'Connell warnings. Trooper Long read these warnings from a form and noted on said form the time that each warning was read. Trooper Long then asked Licensee to submit to a breath test. Licensee, however, refused and was transported back to the police barracks. Approximately thirty to forty minutes after this request, while Licensee was in a holding cell and Trooper Long was typing charges, Licensee asked to take the breath test. Trooper Long indicated that it was now too late. Trooper Long thereafter notified DOT of Licensee's refusal.

By letter dated October 8, 2001, DOT informed Licensee that it was suspending his operating privilege for a period of one year as a result of his refusal to submit to chemical testing on August 17, 2001. Licensee filed a statutory appeal with the trial court. A hearing de novo was scheduled and held before the trial court on February 20, 2002. At this hearing, DOT presented the testimony of Trooper Long. Trooper Long testified to the facts surrounding the accident and his subsequent investigation and arrest of Licensee as described above.

Trooper Long then described his reading of the chemical test warnings to Licensee and his request to Licensee to submit to a breath test.[2] Trooper Long indicated

1. Section 1547(b)(1) of the Code, commonly referred to as the Implied Consent Law, provides as follows:
    If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by

the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.
75   Pa.C.S. § 1547(b)(1).

2. A copy of the form Trooper Long read to Licensee with the aforementioned warnings, including notations made by Trooper Long as to the times the warning were read, was later

that Licensee refused to take the test, that he simply "did not want to take the test." (R.R. at 15a). Later, while at the barracks, Trooper Long indicated that Licensee told him that the reason he refused the test was because he felt "[he] would fail." *Id.* Trooper Long indicated that he advised Licensee that everything was explained to him, i.e., there were "certain consequences for [refusing to take the test]." *Id.* Licensee responded by asking if he could "take it now?" and Trooper Long responded "[n]o, it's too late." (R.R. at 15a–16a). Trooper Long indicated that, by this time, approximately thirty to forty minutes had elapsed since he initially requested that Licensee take a breath test.

On cross-examination, counsel for Licensee presented Trooper Long with a copy of his Affidavit of Probable Cause.[3] In this Affidavit, Trooper Long states that he was dispatched to the scene of a two vehicle accident on August 17, 2001, at 9:40 p.m. *See* R.R. at 21a. The time stated in this Affidavit was not consistent with Trooper Long's prior testimony and the form submitted by DOT, which indicated that Trooper Long read the necessary warnings to Licensee at or about 9:10 p.m. that evening. Upon questioning, Trooper Long testified that he read the aforementioned warnings and noted the times "[a]t the scene" of the accident. (R.R. at 18a). As to the time discrepancy with his Affidavit, Trooper Long noted that he didn't "have the dispatch log in front of [him]" and that [i]t could very well be a typo on [his] Affidavit of Probable Cause." *Id.* DOT then rested, as did Licensee.[4]

The trial court thereafter entered an order denying Licensee's appeal and reinstating the suspension of his operating privilege. Licensee filed a notice of appeal with the trial court. Licensee then filed a statement of issues on appeal. The trial court followed with an opinion in support of its order. In its opinion, the trial court specifically found Trooper Long's testimony to be credible. Based upon this testimony, the trial court concluded that Trooper Long advised Licensee of the necessary warnings, but that Licensee made a knowing and conscious refusal to submit to chemical testing.

On appeal to this Court,[5] Licensee argues that the trial court erred in concluding that DOT met its burden in this case. More specifically, Licensee argues that, based upon the inconsistency between Trooper Long's testimony and his Affidavit of Probable Cause regarding the time of his dispatch to the accident and his reading of the appropriate warnings, the trial court's finding that proper warnings were administered to Licensee was not supported by such evidence. We disagree.

admitted into evidence without objection. The form, as well as Trooper Long's own testimony, indicates that he read Licensee the Miranda warnings at 9:10 p.m., the Implied Consent warnings at 9:12 p.m. and the O'Connell warnings at 9:14 p.m.

3. This Affidavit was also later submitted into evidence without objection.

4. In summation, Licensee simply argued that considering the time noted on the Affidavit of Probable Cause, Trooper Long's testimony was "an impossibility and internally inconsistent." (R.R. at 19a).

5. Our scope of review of the trial court's opinion is limited to determining whether findings of fact are supported by substantial evidence and whether the trial court committed an error of law or an abuse of discretion. *Pappas v. Department of Transportation, Bureau of Driver Licensing,* 669 A.2d 504 (Pa. Cmwlth.1996). Furthermore, questions of credibility and conflicts in the evidence are for the trial court to resolve. *Id.* If there is sufficient evidence in the record to support the findings of the trial court, we must pay proper deference to the trial court as fact finder and affirm. *Id.*

■ To suspend a licensee's operating privilege under Section 1547(b)(1) of the Code, DOT must prove that (1) the licensee was arrested for driving while intoxicated and that the arresting officer had reasonable grounds to believe that the licensee was driving while intoxicated; (2) that the licensee was requested to submit to a chemical test; (3) that the licensee refused the test; and (4) that the licensee was warned that refusing the test would result in a suspension. *Postgate v. Department of Transportation, Bureau of Driver Licensing*, 781 A.2d 276 (Pa. Cmwlth.2001), *petition for allowance of appeal denied*, 568 Pa. 689, 796 A.2d 320 (2002).

■ Once DOT has proven that the licensee failed to submit to the chemical test, the burden then shifts to the licensee to prove by competent evidence that he/she was physically unable to take the test or was not capable of making a knowing and conscious refusal. *See Department of Transportation, Bureau of Driver Licensing v. Wilhelm*, 156 Pa.Cmwlth. 24, 626 A.2d 660 (1993).

■ At the hearing before the trial court, Trooper Long testified that, following his investigation of the accident and arrest of License, he read the aforementioned warnings to him but that he refused to submit to a breath test.[6] Specifically, Trooper Long testified that he read these warnings, as noted on the warnings form, between "2110" and "2114" hours, or between 9:10 p.m. and 9:14 p.m. (R.R. at 14a, 18a, 20a).[7] Admittedly, Trooper Long's Affidavit of Probable Cause indicated that he was dispatched to the scene of the accident at "2140 hrs" or 9:40 p.m. in the evening of August 17, 2001, which conflicts with the above times. (R.R. at 21a). Nevertheless, when questioned regarding this inconsistency, Trooper Long specifically indicated that the same "could very well" have been the result of a typographical error on his Affidavit of Probable Cause.

The trial court credited the entire testimony of Trooper Long. This testimony constitutes substantial evidence in support of the trial court's finding that Trooper Long administered proper warnings to Licensee. Thus, we cannot say that the trial court erred in concluding that DOT met its burden in this case.

Next, Claimant argues that the trial court erred in failing to find that Trooper Long violated his due process rights by refusing to allow him to take the breath test when he requested to do so at the barracks. Again, we disagree.

■ The law is well settled that anything less than a licensee's unqualified, unequivocal assent to submit to chemical testing constitutes a refusal. *See Finney v. Department of Transportation, Bureau of Driver Licensing*, 721 A.2d 420 (Pa. Cmwlth.1998); *Cunningham v. Department of Transportation*, 105 Pa.Cmwlth. 501, 525 A.2d 9 (1987). Moreover, we have previously held that a refusal to take the test is not vitiated by a subsequent request to take the test, even if this subsequent request was made within a few minutes of the refusal. *See Cunningham* (licensee's request to take the test made only five minutes after initial refusal); *Appeal of Miller*, 79 Pa.Cmwlth. 648, 470 A.2d 213 (1984) (licensee's request to take the test

---

6. Licensee never presented any evidence, nor did he ever argue, that he was physically unable to take the test.

7. Moreover, as noted above, Trooper Long specifically testified that he read these warnings to Licensee "at the scene" of the accident. (R.R. at 18a).

made only fifteen to twenty minutes after two separate refusals).[8]

■ Here, there is no question that Licensee initially refused to submit to a breath test. Trooper Long credibly testified to as much before the trial court.[9] Trooper Long also testified that it was not until thirty to forty minutes later that Licensee asked to take the test. In essence, Licensee is now asking this Court to revisit the well-settled principles of law delineated above. Contrary to Licensee's argument in this case, we do not believe that such principles are "fundamentally unfair"[10] and we decline to revisit these principles under the facts of the present case.

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 2nd day of August, 2002, the order of the Court of Common Pleas of Monroe County is hereby affirmed.

---

8. In *Appeal of Miller*, we specifically held that a licensee's refusal to take a breathalyzer test "mandates suspension of his operator's license under the Code." *Appeal of Miller*, 470 A.2d at 213. Explaining the rationale underlying this holding, we explained that "police officers are not required to spend effort either cajoling the defendant or spend time waiting to see if the defendant will ultimately change his mind." *Appeal of Miller*, 470 A.2d at 214.

9. When asked to submit to chemical testing, Trooper Long testified that Licensee indicated that he "would not take the test." (R.R. at 13a). Trooper Long later reiterated that Licensee "just refused" to take the test. (R.R. at 15a).

10. *See* Brief of Licensee at 12.